UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
─────────────────────────────────────

ERICA MCDOWELL,

               Plaintiff,

        V.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security[1],

               Defendant.

─────────────────────────────────────

**REPORT AND RECOMMENDATION**

11-CV-1132
(NAM/VEB)

## I. INTRODUCTION

In October of 2009, Plaintiff Erica McDowell applied for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under the Social Security Act. Plaintiff alleges that she has been unable to work since July of 2006 due to physical and psychological impairments. The Commissioner of Social Security denied Plaintiff's applications.

Plaintiff, by and through her attorneys, Olinsky Law Group, Karen S. Southwick, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On January 3, 2013, the Honorable Gary L. Sharpe, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 19).

[1]On February 14, 2013, Carolyn W. Colvin took office as Acting Social Security Commissioner. The Clerk of the Court is directed to substitute Acting Commissioner Colvin as the named defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure .

## II. BACKGROUND

The relevant procedural history may be summarized as follows:

Plaintiff applied for SSI benefits and DIB on October 22, 2009, alleging disability beginning on July 7, 2006. (T at 172, 178).[2]  The applications were denied initially and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held on November 23, 2010, in Syracuse, New York, before ALJ Thomas P. Tielens.[3]  (T at 26, 62).  Plaintiff appeared with an attorney and testified. (T at 66-96).

On January 21, 2011, ALJ Tielens issued a written decision finding that Plaintiff was not disabled, as defined under the Social Security Act, and was therefore not entitled to benefits. (T at 23-41).  Plaintiff requested a review by the Social Security Appeals Council. On September 1, 2011, the Appeals Council issued a decision modifying a particular aspect of the ALJ's decision, but concluding that Plaintiff was not disabled under the Act. (T at 1-9).

Plaintiff, through counsel, timely commenced this action on September 23, 2011. (Docket No. 1).  The Commissioner interposed an Answer on March 26, 2012. (Docket No. 8).  Plaintiff filed a supporting Brief on May 10, 2012. (Docket No. 13).  The Commissioner filed a Brief in opposition on June 25, 2012. (Docket No. 14).  With leave of the Court, Plaintiff filed a Reply Brief on July 16, 2012. (Docket No. 17).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had

---

[2]Citations to "T" refer to the Administrative Transcript.  (Docket No. 10).

[3]Plaintiff and her attorney appeared in Binghamton.  The ALJ presided via videoconference from Syracuse. (T at 18).

accompanied their briefs with a motion for judgment on the pleadings.[4]

For the reasons that follow, it is recommended that the Commissioner's motion be denied, Plaintiff's motion be granted, and this case be remanded for further proceedings.

## III. DISCUSSION

### A. Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

---

[4]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[5]

---

[5]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

## B.  Analysis

### 1.  Commissioner's Decision

#### a.  ALJ's Ruling

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2012, and had not engaged in substantial gainful activity since July 7, 2006, the alleged onset date. (T at 28).  The ALJ concluded that Plaintiff had the following severe impairments, as defined under the Act: asthma, back pain, and depression. (T at 28-29).

However, the ALJ found that Plaintiff's impairments did meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 29-31).

---

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

The ALJ determined that Plaintiff retained the residual functional capacity to perform light work, as defined in 20 CFR 404.1567 (b), except that she was required to avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation, and was limited to simple, repetitive tasks. (T at 31-36). The ALJ concluded that Plaintiff was capable of performing her past relevant work as a cashier. (T at 36). As such, the ALJ determined that Plaintiff had not been under a disability, as defined under the Social Security Act, from July 7, 2006 (the alleged onset date) through January 21, 2011 (the date of the ALJ's decision). (T at 37).

### b.    Appeals Council's Decision

The Appeals Council adopted the ALJ's determination that Plaintiff had not engaged in substantial gainful activity since the alleged onset date, that Plaintiff had severe impairments, and that those impairments that did not meet or equal an impairment set forth in the Listings. (T at 5). The Appeals Council also agreed with the ALJ's conclusion that Plaintiff retained the residual functional capacity to perform light work as defined in 20 CFR 404.1567 (b), except that she was required to avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation, and was limited to simple, repetitive tasks. (T at 5).

However, the Appeals Council did not accept the ALJ's finding at step four of the sequential evaluation process regarding Plaintiff's ability to perform past relevant work. The Appeals Council concluded that Plaintiff did not have any past work that met the regulatory definition of "past relevant work." (T at 5). The Appeals Council thus proceeded to step five of the sequential evaluation and considered whether jobs exist in the national economy that a person having Plaintiff's qualifications could perform.    Considering

Plaintiff's age (29), education (limited), work experience (no past relevant work), and residual functional capacity (light work, with restrictions), the Appeals Council concluded that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. As such, the Appeals Council found that Plaintiff was not disabled during the time period at issue (i.e. the alleged onset date through the date of the ALJ's decision) and was therefore not entitled to benefits. (T at 5-6).

### 2. Plaintiff's Arguments

Plaintiff challenges the Commissioner's decision. She offers six (6) principal arguments in support of her position. First, Plaintiff contends that the Commissioner failed to develop the record by ordering a consultative examination and obtaining school records. Second, Plaintiff argues that the Commissioner should have re-opened her prior applications. Third, Plaintiff asserts that the ALJ erred by finding that her chronic chest pain was a non-severe impairment. Fourth, Plaintiff contends that the ALJ did not properly assess the opinion of her treating physician. Fifth, Plaintiff challenges the ALJ's credibility determination. Sixth, Plaintiff argues that the Appeals Council's step five analysis was flawed. This Court will address each argument in turn.

### a. Development of Record

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." Perez v. Chater, 77 F.3d 41, 47 (2d Cir.1996) (citing Echevarria v. Secretary of Health & Human Servs., 685 F.2d 751, 755 (2d Cir.1982)). To fulfil this duty, the ALJ may order a consultative examination to further develop the evidentiary record. See Serianni v. Astrue,

No. 6:07–CV–250, 2010 WL 786305, *5 (N.D.N.Y. Mar. 1, 2010) (citing Hughes v. Apfel, 992 F.Supp. 243, 248 (W.D.N.Y.1997) (citing 20 C.F.R. § 404.1517))). "Several courts have held . . . that in fulfilling the duty to conduct a full and fair inquiry, an ALJ is required to order a consultative examination where the record establishes that such an examination is necessary to enable the ALJ to render a decision." Id. (citations omitted).

Generally, the ALJ should order a consultative examination when "[a] conflict, inconsistency, ambiguity or insufficiency in the evidence must be resolved." Id. (quoting Matejka, 386 F. Supp.2d at 209) (other citations omitted); see also Cruz v. Shalala, No. 94 Civ. 0929, 1995 WL 441967, *5 (S.D.N.Y. July 26, 1995). However, the ALJ "is not obligated to send a litigant for a consultative examination if the facts do not warrant or suggest the need for such an examination." Id. (citing Cruz, 1995 WL 441967, at *5). "Where a plaintiff suggests a possible mental impairment, but no treatment has been recommended or received, the ALJ must assess whether there is any evidence of work-related functional limitations resulting from the possible mental impairment." Id. (citing Haskins v. Comm'r of Soc. Sec., No. 5:05-CV-292, 2008 WL 5113781, at *7, n. 5 (N.D.N.Y.2008)).

In the present case, the record did not include a consultative intelligence evaluation or any of Plaintiff's school records. Plaintiff argues that the ALJ was obligated to fill this evidentiary gap. In support of this argument, Plaintiff points to the following evidence: She completed the 11th grade in 2002, at the age of 20. (T at 183). Dr. Jeanne Shapiro, the consultative psychiatric examiner, estimated that Plaintiff's intellectual function was "in the deficient range" and found Plaintiff's general fund of information to be "somewhat limited." (T at 291). Dr. Shapiro indicated a diagnosis of "r/o [rule out] mental retardation." (T at

8

292).

The ALJ noted that Plaintiff had alleged "borderline intellectual functioning" as a disabling impairment, but found no "diagnosis related to an IQ issue." (T at 29). In addition, the ALJ referenced a report provided by Jennifer DiFabio, a mental health counselor at Liberty Resources, which indicated that Plaintiff's intellectual functioning was "average." (T at 371). The ALJ also noted that Plaintiff had worked as a home health aide, which suggested that she had the mental ability to perform basic work activities. (T at 29).

This Court finds that the ALJ was not obligated to order a consultative intelligence evaluation under the circumstances. In sum, the record contained adequate evidence to sustain the ALJ's conclusion that Plaintiff's intellectual functioning was sufficient to allow her to perform simple, repetitive tasks.

The record contained an assessment of Plaintiff's intellectual functioning from her mental health counselor, Ms. DiFabio, who described Plaintiff's intellect as "average." (T at 371). In addition, the record included the opinion of Dr. David Kang, Plaintiff's treating physician, who opined that Plaintiff did not have a low IQ or reduced intellectual functioning. (T at 432).

At the administrative hearing, the ALJ asked Plaintiff's attorney to provide educational records to support the claim of borderline intellectual functioning. (T at 73-74). The records were apparently never provided. See 20 CFR § 404.1512 (c)(2)(claimant is responsible for providing evidence regarding education).

Plaintiff underwent training and received a home health aide certificate and then worked in that capacity on a part-time basis for more than three years. (T at 74-75). The ALJ reasonably cited this as evidence that Plaintiff had the intellectual capacity to perform

basic work activities. In terms of finding the treating provider opinions and work history more persuasive that Dr. Shapiro's "rule out mental retardation diagnosis," that finding was within the ALJ's discretion. See White v. Comm'r of Social Security, No. 06-CV-0564, 2008 WL 3884355, at *11 (N.D.N.Y. Aug. 18, 2008)("Conflicts in evidence . . . are for the Commissioner to resolve.")(citing Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir.1983)).

In light of the foregoing, this Court finds that the "ALJ was not obligated to send plaintiff, who was represented by counsel, for a consultative examination when the facts did not warrant such an examination." Serianni, 2010 WL 786305, at *6; see also Casson v. Astrue, No. 5:10-CV-1537, 2011 WL 6955837, at *8 n. 16 (N.D.N.Y. Nov. 9, 2011). Thus, this Court finds no reversible error with regard to this aspect of the ALJ's determination.

### b.    Prior Applications

Plaintiff filed four (4) applications for benefits prior to the applications under review, all of which were denied. (T at 174). On September 20, 2010, while the current applications were pending, Plaintiff's counsel filed a motion to re-open the prior applications, arguing that Plaintiff's intellectual functioning difficulties may have impacted her ability to protect her rights. (T at 142-43). The ALJ did not address the motion. However, the Appeals Council considered the request and denied it, finding "no reason under our rules to reopen the prior determinations." (T at 2-3). Plaintiff challenges the Appeals Council's decision. However, as set forth below, this Court has no jurisdiction to review that aspect to the decision.

"As a general rule, federal courts lack jurisdiction to review an administrative decision not to reopen a previous claim for benefits." Byam v. Barnhart, 336 F.3d 172, 178 (2d Cir.2003) (citing Califano v. Sanders, 430 U.S. 99, 107–09, 97 S.Ct. 980, 51 L.Ed.2d

192 (1977) (explaining that a decision to not reopen a case is not "final decision" as required for judicial review under Section 405(g) of the Social Security Act).

The Second Circuit has explained that "federal courts may review the Commissioner's decision not to reopen a disability application in two circumstances: where the Commissioner has constructively reopened the case and where the claimant has been denied due process." Id. at 180. Plaintiff does not allege either of these two exceptions[6] and the record does not suggest that Plaintiff would be successful on either ground. As such, this Court lacks jurisdiction to review the Commissioner's decision to not reopen Plaintiff's prior applications. Accordingly, Plaintiff is not entitled to relief on this basis.

### c. Severity Analysis

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c). The following are examples of "basic work activities": "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling ... seeing, hearing, and speaking ... [u]nderstanding, carrying out, and remembering simple instructions ... [u]se of judgment ... [r]esponding appropriately to supervision, co-workers and usual work situations." Gibbs v. Astrue, No. 07-Civ-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. § 404.1521(b)(l)-(5).

---

[6]Plaintiff argues that reopening of the prior applications was warranted under SSR 91-5p, which provides for the waiving of administrative appeal deadlines when a claimant's mental impairment provided "good cause" for missing the deadlines. Even if this Court had jurisdiction to consider whether the Commissioner properly applied SSR 91-5p, it would find that the Commissioner's decision not to re-open the prior applications was adequately supported. As discussed above, although Plaintiff alleged borderline intellectual functioning, the medical record contained evidence that she had at least average intelligence and was able to manage basic activities of daily living.

The claimant bears the burden of presenting evidence establishing severity. Miller v. Comm'r of Social Sec., No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); see also 20 C.F.R. § 404.1512(a). Although the Second Circuit has held that this step is limited to "screen[ing] out de minimis claims," Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." Coleman v. Shalala, 895 F.Supp. 50, 53 (S.D.N.Y.1995). Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" Rosario v. Apfel, No. 97-CV-5759, 1999 WL 294727 at *5 (E.D.N.Y. March 19,1999)(quoting Bowen v. Yuckert, 482 U.S. 137, 154 n. 12 (1987)).

In this case, the ALJ recognized that Plaintiff alleged chest pain as a severe impairment. However, the ALJ noted that no diagnosis related to chest pain was contained in the record and that Plaintiff's chest x-ray was normal. As such, the ALJ found that Plaintiff's chest pain was a non-medically determinable impairment. (T at 29).

Plaintiff challenges this finding, pointing to medical records documenting her complaints of chest pain (T at 515-16, 522-23). In February of 2008, Dr. Mark Barasz, an emergency room physician, diagnosed costochrondritis, an inflammation that causes chest wall pain. (T at 394). Dr. Kalyani Ganesh, the consultative examiner, noted a "[h]istory of chest pain, etiology unknown." (T at 296).

This Court finds no reversible error with regard to this aspect of the ALJ's decision. Although the record does, in fact, contain references to Plaintiff's complaints of chest pain, no provider assessed any limitations arising from that pain. In fact, Dr. Ganesh referenced

12

Plaintiff's history of chest pain, but opined that she had no gross physical limitation as to sitting, standing, or walking and only a mild limitation with respect to lifting, carrying, pushing, and pulling. (T at 297).  As such, even if the ALJ should have concluded that Plaintiff's chest pain (or costochrondritis) was a medically determinable impairment, the record indicated that it imposed no more than a minimal limitation on Plaintiff's ability to perform work.

In addition, because the ALJ concluded that Plaintiff established other impairments considered severe under the Act (i.e. asthma, back pain, and depression) and continued with the sequential analysis, any errors in his findings at step two of the analysis were harmless. See Maziarz v. Secretary of Health & Human Services, 837 F.2d 240, 244 (6th Cir. 1987)("[T]he Secretary found that Maziarz suffered from the severe impairment of coronary artery disease, status post right coronary artery angioplasty and angina pectoris. Accordingly, the Secretary continued with the remaining steps in his disability determination. Since the Secretary properly could consider claimant's cervical condition in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, the Secretary's failure to find that claimant's cervical condition constituted a severe impairment could not constitute reversible error."); McCartney v. Commissioner of Social Sec., Civil Action No. 07-1572, 2009 WL 1323578, at *16 (W.D.Pa. May 8, 2009)("Even if the Court was to find that the ALJ did err in excluding headaches from the list of severe impairments, any such error was harmless because the ALJ found other severe impairments at step two and proceeded through the sequential evaluation on the basis of Plaintiff's severe and non-severe impairments."); Portorreal v. Astrue, No. C.A. 07-296ML, 2008 WL 4681636, at *3 (D.R.I. Oct. 21, 2008).

As such, this Court finds no reversible error in the ALJ's step two analysis.

### d.    Treating Physician's Opinion

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[7]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances.  In this regard, the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also de Roman, 2003 WL 21511160, at *9; Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998).

In this case, Dr. David Kang treated Plaintiff for approximately 30 minutes at a time on a monthly basis. (T at 430).  On November 5, 2010, Dr. Kang completed a medical source statement, in which he opined that Plaintiff suffered from major depressive disorder and personality disorder, along with migraines, asthma, a herniated disc, back pain, and

---

[7]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

variable blood pressure. (T at 430). He noted the following signs and symptoms: pervasive loss of interest in almost all activities; past thoughts of suicide; emotional isolation; hallucinations or delusion; occasional impairment in impulse control; and sleep disturbance. (T at 430).

With regard to Plaintiff's ability to perform unskilled work, Dr. Kang assessed that Plaintiff was seriously limited, but not precluded, from performing the following tasks: working in coordination with or proximity to others without being unduly distracted; completing a normal workday and workweek without interruptions from psychologically based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; accepting instructions and responding appropriately to criticism from supervisors; getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; and responding appropriately to changes in a routine work setting. (T at 431).

Dr. Kang assessed that Plaintiff would be unable to meet competitive standards relative to dealing with work stress. (T at 431). He also opined that Plaintiff had a limited, but satisfactory, ability to remember work-like procedures; understand and remember very short and simple instructions; make simple work-related decisions; interact appropriately with the general public; and use public transportation. (T at 432).

Dr. Kang concluded that Plaintiff would be "off-task" (i.e. unable to maintain attention or perform at a consistent pace) approximately 10% of the time during an 8-hour workday and would be absent from work more than 4 days per month due to her impairments. (T at 432).

The ALJ afforded "no weight" to Dr. Kang's opinion. (T at 35). The ALJ supported

15

his decision by noting that the physician "*apparently* relied quite heavily on the subjective report of symptoms and limitations provided by [Plaintiff] and *seemed* to uncritically accept as true most, if not all, of what [Plaintiff] reported." (T at 35)(emphasis added). In contrast, the ALJ found Plaintiff's credibility suspect and faulted Dr. Kang for crediting Plaintiff's complaints. (T at 35).

In addition, the ALJ offered the observation that "patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians, who might provide such a note in order to satisfy their patients' requests and avoid unnecessary doctor/patient tension." (T at 35). However, the ALJ acknowledged that it is "difficult to confirm the presence of such motives," and pointed to absolutely no evidence to support the suggestion that Dr. Kang might have exaggerated Plaintiff's limitations because of Plaintiff's pestering and/or to "avoid unnecessary doctor/patient tension." (T at 35).

Lastly, the ALJ noted that Dr. Kang had previously assigned Plaintiff a Global Assessment Functioning ("GAF") score of 60, which indicates only moderate difficulty in social or occupational functioning. (T at 447, 452, 459, 483). See Anderson v. Astrue, No. 07-CV-4969, 2009 WL 2824584, at *3 n.3 (E.D.N.Y. Aug. 28, 2009); Snyder v. Astrue, No. 07-CV-0763, 2009 WL 3381556, at *2 n.2 (N.D.N.Y. Oct. 16, 2009)("A GAF of 51 to 60 signifies 'moderate symptoms (e.g., flat affect and circumstantial speech occasional panic attacks) or moderate difficulty in social, occupational or school functioning (e .g., few friends, conflicts with peers or co-workers).'")(quoting Diagnostic and Statistical Manual of Mental Disorders-IV-TR, p. 34).

This Court has no hesitancy in concluding that the ALJ did not properly assess Dr. Kang's opinion. First, Dr. Kang can hardly be faulted for relying on Plaintiff's subjective

16

complaints and reports, which the Second Circuit has called "an essential diagnostic tool." Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir.2008) (quoting Green-Younger v. Barnhart, 335 F.3d 99, 107 (2d Cir.2003)) (referring to "a patient's report of complaints, or history, as an essential diagnostic tool.").

Second, the ALJ should not have been so quick to conclude that his assessment of Plaintiff's credibility was more reliable than Dr. Kang's. The ALJ, who is not a medical professional, interacted with Plaintiff on one occasion - during the administrative hearing. Dr. Kang, a treating physician, treated Plaintiff once a month for 30 minutes for nearly a year before he rendered his opinion. In addition, the medical source statement indicates that Plaintiff was treated by a therapist in Dr. Kang's office once a week for 45 minutes. (T at 430). Notwithstanding this discrepancy, the ALJ summarily concluded that his own assessment of Plaintiff's credibility was more accurate than Dr. Kang's.

Third, the ALJ did not account for the fact that Dr. Kang's opinion was partially supported by the assessment of Dr. Shapiro, the consultative examiner. Dr. Shapiro concluded that Plaintiff might have difficulty adequately understanding and following some instructions and completing tasks due to memory, concentration, and cognitive deficits. (T at 292). Dr. Shapiro also opined that Plaintiff might have difficulty interacting appropriately with others due to social withdrawal and might find it difficult to attend to work or maintain a schedule due to lack of motivation and lethargy. (T at 291). She also reported that Plaintiff does not appropriately manage stress. (T at 291). The ALJ assigned "partial weight" to Dr. Shapiro's assessment, but apparently did not account for the fact that her assessment and Dr. Kang's opinion were consistent with each other.

This was a significant omission with serious consequences for the ALJ's decision.

For example, Dr. Kang opined that Plaintiff could not meet competitive standards relative to dealing with work stress. (T at 431). In particular, Dr. Kang noted that work stress would cause Plaintiff to "lash out" and become aggressive. (T at 431). Dr. Shapiro likewise concluded that Plaintiff does not appropriately manage stress. (T at 291). The ALJ did not include any limitation (or significant discussion) with regard to Plaintiff's ability to perform low-stress work, even though both the treating physician and consultative examiner concluded that Plaintiff could not respond appropriately to work stress.

The Second Circuit has said that "the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion." Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir.1998). The ALJ "is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who submitted an opinion or testified before him." Id. (quoting McBrayer v. Sec'y of Health & Human Servs., 712 F.2d 795, 799 (2d Cir.1983)); see Filocomo v. Chater, 944 F.Supp. 165, 170 (E.D.N.Y.1996) ("In the absence of supporting expert medical opinion, the ALJ should not have engaged in his own evaluations of the medical findings."). Here, the ALJ improperly substituted his opinion for that of the treating physician and consultative examiner with regard to Plaintiff's limitations and, in particular, with respect to Plaintiff's ability to handle stress.

Fourth, the ALJ's suggestion that Dr. Kang provided a false or exaggerated assessment of Plaintiff's limitations out of sympathy and/or a desire to avoid tension was entirely unsupported by the record. This supposition, which amounted to a challenge to Dr. Kang's professional integrity, should not have been made in the absence of concrete supporting evidence. The ALJ implied that Dr. Kang's report was exaggerated while

acknowledging that it was "difficult to confirm the presence of such motives." (T at 36). The ALJ appears to have ignored the fact that Dr. Kang's opinion was consistent with the consultative examiner's assessment (as outlined above), which is powerful evidence contradicting the ALJ's exaggeration allegation.

Moreover, to the extent the ALJ believed Dr. Kang's opinion was inadequately supported by objective findings and/or motivated by extrinsic considerations (e.g. avoiding physician/patient "tension"), he had an obligation to re-contact the treating physician before giving "no weight" to his opinion. The ALJ has an "affirmative duty to develop the record and seek additional information from the treating physician, *sua sponte*, even if plaintiff is represented by counsel" to determine upon what information the treating source was basing his opinions. Colegrove v. Comm'r of Soc. Sec., 399 F.Supp.2d 185, 196 (W.D.N.Y.2005); see also 20 C.F.R. §§ 404.1212(e)(1), 416.912(e) (1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source ... does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."); Taylor v. Astrue, No. CV-07-3469, 2008 WL 2437770, at *3 (E.D.N.Y. June 17, 2008) (finding it error for the ALJ to not re-contact Plaintiff's treating physician when he determined that the physician's opinion was "not well-supported by objective medical evidence").

Accordingly, this Court finds that the ALJ's assessment of Dr. Kang's opinion was not supported by substantial evidence, was not rendered consistent with applicable law, and cannot be sustained. In addition, the ALJ's summary dismissal of Dr. Kang's opinion, along with the unfounded exaggeration suggestion, lead this Court to conclude that this case should be assigned to a different ALJ on remand, as discussed further below.

### e. Credibility

Courts in the Second Circuit have determined a claimant's subjective complaints are an important element in disability claims, and they must be thoroughly considered. See Ber v. Celebrezze, 333 F.2d 923 (2d Cir.1994). Further, if a claimant's testimony of pain and limitations is rejected or discounted, the ALJ must be explicit in the reasons for rejecting the testimony. See Brandon v. Bowen, 666 F.Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F. Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....
>
> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

1. [Plaintiff's] daily activities;
2. The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
3. Precipitating and aggravating factors;
4. The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
5. Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
6. Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
7. Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F.Supp 604, 608 (S.D.N.Y.1987)).

In this case, Plaintiff testified as follows:

She worked part-time at Macy's department store in 2008, but quit because of back pain. (T at 67). Plaintiff then worked part-time as a cashier at a fast-food restaurant, but quit due to back pain and excessive absences. (T at 68). She was expelled from school for fighting in the eleventh grade. (T at 70). Plaintiff was held back twice and attended special education classes were math and science. (T at 73). She received training and a

certification as a home health aide in 2003 and worked in that capacity for approximately three (3) years. (T at 74). Plaintiff stopped that employment due to back pain. (T at 75). Plaintiff's back pain is a persistent problem, aggravated by sitting and standing. (T at 76). Lifting more than 20 pounds also causes back pain. (T at 76). She uses public transportation, but becomes anxious in public. (T at 76). Plaintiff treats with a therapist for depression and receives physical therapy for back pain. (T at 76). She has migraines that last all day 4 to 5 times per week, with associated light and sound sensitivity and difficulty concentrating. (T at 77). Her depression makes her sleepy, causes mood swings, and difficulty interacting with others. (T at 79). She stopped driving due to back pain. (T at 85). Plaintiff is able to perform light housework for brief periods on her "good days." (T at 85-86). She has panic attacks two to three times per month. (T at 87). She can stand for 10 to 15 minutes, walk 2 or 3 blocks, lift/carry no more than 20 pounds, and sit for no more than 20 minutes. (T at 87-89). Her medications cause dizziness, sleepiness, and shaking. (T at 94).

The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the extent they were inconsistent with his RFC determination. (T at 33).

The ALJ outlined several reasons for questioning Plaintiff's credibility. In particular, he referenced an October 2009 report that indicated Plaintiff was non-compliant with her medication. (T at 34, 268). The ALJ also noted that Plaintiff was able to perform various activities of daily living, including living alone and maintaining her residence. (T at 33). The ALJ referenced instances of contradictions in the record, wherein Plaintiff claimed she

could not bend, but had no difficulty putting on her shoes and wherein Plaintiff testified that she had a herniated disc, even though the objective findings indicated that her back pain was muscular in nature. (T at 34). The ALJ described Plaintiff's treatment as "essentially routine and/or conservative in nature" and therefore inconsistent with Plaintiff's allegations. (T at 34). The ALJ referenced several treatment gaps, wherein Plaintiff did not receive any psychiatric treatment, suggesting that this undermined her claim of disabling mental impairments. (T at 35). As discussed above, the ALJ also strongly suggested that Plaintiff persuaded Dr. Kang to provide a medical source statement with exaggerated limitations by being "insistent and demanding." (T at 35).

The ALJ's credibility determination is flawed and should be revisited. First, although Plaintiff is apparently able to perform light housework and attend to her basic activities of daily living, this does not preclude a disability finding. Indeed, it is well-settled that "[s]uch activities do not by themselves contradict allegations of disability," as people should not be penalized for enduring the pain of their disability in order to care for themselves." Woodford v. Apfel, 93 F. Supp.2d 521, 529 (S.D.N.Y. 2000); see also Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) ("We have stated on numerous occasions that 'a claimant need not be an invalid to be found disabled' under the Social Security Act."). "[T]he mere fact that [a claimant] is mobile and able to engage in some light tasks at [her] home does not alone establish that [s]he is able to engage in substantial gainful activity." Lecler v. Barnhart, 2002 WL 31548600, at *7 (S.D.N.Y. Nov. 14, 2002) quoting Gold v. Sec'y of Health, Ed. & Welfare, 463 F.2d 38, 41 n. 6 (2d Cir. 1972)).

Second, the ALJ should not have discounted Plaintiff's credibility based upon her non-compliance with treatment and/or gaps in treatment without first affording her an

opportunity to explain. SSR 96-7p provides that a claimant's "statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed." Under that ruling, however, an ALJ must not draw an adverse inference from a claimant's failure to seek or pursue treatment "without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." Id. Moreover, to the extent the ALJ questioned the severity of Plaintiff's depression based upon her failure to seek treatment on a consistent basis, this reasoning has rightly been described as a "questionable practice." See Day v. Astrue, No. 07 CV 157, 2008 WL 63285, at *5 n.6 (E.D.N.Y. Jan. 3, 2008)(noting that it "is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation")(quoting Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir.1996) and citing Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir.1989)).

Third, the ALJ's failure to adequately address the opinions of Dr. Kang and Dr. Shapiro affected his consideration of Plaintiff's credibility. Dr. Kang's assessment certainly supported Plaintiff's testimony concerning the limiting effects of her psychiatric symptoms. Likewise, Plaintiff's testimony was supported by Dr. Shaprio's conclusion that she would have difficulty adequately understanding and following some instructions, completing tasks due to memory, interacting appropriately with others, attending to work, and appropriately managing stress. (T at 291). The ALJ was very quick to assume that his assessment of Plaintiff's credibility was superior and thus disregarded Dr. Kang's opinion as having given too much credence to subjective complaints. This was error for the reasons outlined

above.

Lastly, as discussed above, the ALJ should not have questioned Dr. Kang's motives or professional integrity without any supporting evidence. In like manner, the ALJ suggested that Plaintiff pressured Dr. Kang into providing a exaggerated assessment, an accusation that had no foundation. The allegation also does not account for the fact that Dr. Kang's opinion is supported, in part, by the consultative examiner's assessment, which rebuts the suggestion that the treating physician was pressured into exaggerating Plaintiff's limitations.

Accordingly, the question of Plaintiff's credibility should be revisited on remand.

### e.    Step Five Analysis

At step 5 in the sequential evaluation, an ALJ is required to perform a two part process to first assess the claimant's job qualifications by considering her physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that the claimant could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). The second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). See Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir.1986).

If a claimant's work capacity is significantly diminished by non-exertional impairments beyond that caused by his or her exertional impairment(s), then the use of the Grids may be an inappropriate method of determining a claimant's residual functional capacity and the ALJ may be required to consult a vocational expert. See Pratts v. Chater,

94 F.3d 34, 39 (2d Cir.1996); <u>Bapp v. Bowen</u>, 802 F.2d 601, 604-605 (2d Cir.1986).

The ALJ found that Plaintiff could perform her past relevant work at step four of the sequential evaluation and, thus, did not perform a step five analysis. (T at 36). The Appeals Council adopted all of the ALJ's findings, except his step four analysis. (T at 5). The Appeals Council found that Plaintiff had no past relevant work and proceeded with the step five analysis. Considering Plaintiff's age (29 years old), education (limited), past relevant work (none), and RFC (light work, with limitations), the Appeals Council found Plaintiff "not disabled" within the framework of Rule 202.17, Table No. 2, of the Grid. (T at 6). Although the Appeals Council noted that Plaintiff's non-exertional impairments further limited the number of jobs she could perform, it concluded that these additional limitations did not significant erode the occupational base. (T at 6).

The Appeals Council's step five analysis incorporated the ALJ's RFC determination, which in turn was based on the ALJ's assessment of the medical evidence and Plaintiff's credibility. The ALJ's findings on these issues, which the Appeals Council adopted, were flawed for the reasons set forth in detail above. As such, the RFC determination and the step five analysis will need to be revisited on remand.

### 3. Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" <u>Butts v. Barnhart</u>, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)). Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." <u>Kirkland v. Astrue</u>, No. 06 CV 4861, 2008 WL 267429, at *8

(E.D.N.Y. Jan. 29, 2008).

Given the significant deficiencies in the record and the Commissioner's inadequate consideration of the treating physician's opinion as outlined above, it is recommended that the case be remanded for further proceedings. In addition, this Court recommends assignment to a different ALJ on remand.

Courts in this Circuit typically refrain from directing the Commissioner to assign a different ALJ upon remand. See, e.g, Hartnett v. Apfel, 21 F. Supp.2d 217, 222 (E.D.N.Y.1998). However, in limited instances, it is appropriate to consider whether "a fresh look by another ALJ [upon remand] would be beneficial[.]" Vicari v. Astrue, 05 CV 4967, 2009 WL 331242, at *6 (E.D.N.Y. Feb. 10, 2009).

In such circumstances, courts, including the Second Circuit, have directed that a different ALJ be assigned on remand. See, e.g., Kolodnay v. Schweiker, 680 F.2d 878, 880-81 (2d Cir.1982); Maggipinto v. Astrue, 541 F.Supp.2d 477, 479-80 (D.Conn.2007); Hartnett v. Apfel, 21 F.Supp.2d 217, 223 (E.D.N.Y.1998); Sutherland v. Barnhart, 322 F.Supp.2d 282, 292 -293 (E.D.N.Y. 2004); Miles v. Chater, 84 F.3d 1397, 1400-01 (11th Cir.1996); Ventura v. Shalala, 55 F.3d 900, 904-05 (3d Cir.1995).

"Specifically, when the conduct of an ALJ gives rise to serious concerns about the fundamental fairness of the disability review process, remand to a new ALJ is appropriate." Sutherland v. Barnhart, 322 F.Supp.2d 282, 292-93 (E.D.N.Y. 2004) Courts faced with this question generally consider whether the following factors are present: (1) a clear indication that the ALJ will not apply the appropriate legal standard on remand; (2) a clearly manifested bias or inappropriate hostility toward any party; (3) a clearly apparent refusal to consider portions of the testimony or evidence favorable to a party, due to apparent

hostility to that party; (4) a refusal to weigh or consider evidence with impartiality, due to apparent hostility to any party. Id.

The ALJ's unsupported accusation regarding Dr. Kang's medical source statement (namely, his suggestion that Plaintiff pressured Dr. Kang into submitting an opinion that exaggerated Plaintiff's limitations) is a clear indication of inappropriate hostility to Plaintiff. It is also clearly apparent that the ALJ afforded "no weight" to Dr. Kang's opinion (and chose not to re-contact the treating physician) because the ALJ concluded that Dr. Kang was naive in crediting Plaintiff's subjective complaints. The ALJ appears not to have considered the fact that he only observed Plaintiff for a brief period time; while Dr. Kang and his staff interacted with Plaintiff on a weekly basis for nearly a year. Accordingly, this Court recommends that a different ALJ be assigned on remand.

## IV. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Commissioner's Motion be DENIED, that Plaintiff's Motion be GRANTED, and that the case be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405 (g) for further administrative proceedings consistent with this Report and Recommendation, with a different ALJ being assigned on remand.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:   March 11, 2013
          Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.**

Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

March 11, 2013

Victor E. Bianchini
United States Magistrate Judge